IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,249

In the Matter of JOHN M. KNOX,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed December 23, 2016. One-year suspension.

*Stanton A. Hazlett*, Disciplinary Administrator, argued the cause, and was on the formal complaint for the petitioner.

*John M. Knox*, respondent, argued the cause pro se.

*Per Curiam*:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, John M. Knox, of Lawrence, an attorney admitted to the practice of law in Kansas in 1994.

On August 11, 2015, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent failed to file an answer. On August 31, 2015, the office of the Disciplinary Administrator filed an amended formal complaint. The respondent filed a proposed plan of probation on September 28, 2015, and an untimely answer to the amended formal complaint on October 5, 2015. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on October 8, 2015, where the respondent was personally present. The hearing panel determined that the respondent violated KRPC 1.3 (2015 Kan. Ct. R. Annot. 461) (diligence); 1.4(a) (2015 Kan. Ct. R. Annot. 482) (communication); 1.5(a) (2015 Kan. Ct. R. Annot. 503) (fees);

1

1.15(a) (2015 Kan. Ct. R. Annot. 556) (safekeeping property) and 1.15(d) (preserving client funds); 1.16(a)(3) and (d) (2015 Kan. Ct. R. Annot. 572) (termination of representation); 8.1(b) (2015 Kan. Ct. R. Annot. 661) (failure to disclose a fact necessary to correct a misapprehension known by respondent); 8.4(d) (2015 Kan. Ct. R. Annot. 672) (engaging in conduct prejudicial to the administration of justice); Kansas Supreme Court Rule 207(b) (2015 Kan. Ct. R. Annot. 328) (failure to cooperate in disciplinary investigation); and Kansas Supreme Court Rule 211(b) (2015 Kan. Ct. R. Annot. 350) (failure to file answer in disciplinary proceeding).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"8.      J.R. and G.R., a married couple, became estranged and, as a result, a number of legal matters arose.

"9.      On January 17, 2014, J.R. filed a petition *pro se* for a protection from abuse order against G.R.

"10.      On February 10, 2014, J.R. retained the respondent to file a divorce action on her behalf, to represent her in the event criminal charges were filed against her, and to represent her in a second petition for protection from abuse action. On that day, J.R. met with the respondent in his office in Lawrence, Kansas.

"11.      On February 11, 2014, J.R. and the respondent entered into a written flat fee agreement for the representation. J.R. paid the respondent $6,000 for attorney fees and $176 for a filing fee. According to the fee agreement, the respondent would earn the

fee upon receipt of the fee. The respondent did not deposit the attorney fee or the filing fee into his trust account.

"12.    On February 12, 2014, J.R. and the respondent met again to allow J.R. to review pleadings which the respondent had prepared. J.R. signed the pleadings with the understanding that the respondent would incorporate certain changes before the pleadings were filed with the court.

"13.    J.R. asked the respondent to let her know before the divorce action was filed because she wanted to tell G.R. In the past, G.R. had been violent with J.R. and G.R. suffered mental health problems. As a result, J.R. wanted to be able to handle how G.R. was told of the divorce.

"14.    On February 13, 2014, the respondent filed a petition for divorce on behalf of J.R. in the Douglas County District Court, case number 2014DM150. Before informing his client, the respondent spoke by telephone with G.R. and told G.R. that the divorce had been filed. After the respondent told G.R. that the divorce had been filed, G.R. called J.R. at work, screaming at her for filing the divorce without first telling him.

"15.    On February 13, 2014, the Leavenworth County Attorney filed a criminal complaint against J.R., alleging that J.R. committed the crime of battery; G.R. was the alleged victim in the battery case.

"16.    On February 14, 2015, J.R. filed a second *pro se* petition for a protection from abuse order against G.R.

"17.    At some point prior to February 14, 2014, Ed Sloan entered his appearance on behalf of G.R. During the representation of J.R. and G.R. the respondent and Mr. Sloan developed difficulties in communicating. At the hearing on the amended formal complaint, the respondent testified that he refrained from communicating with Mr. Sloan because J.R. directed him to not communicate with Mr. Sloan. The hearing panel has considered all the evidence presented and concludes that the respondent's testimony

3

in this regard lacks credibility. The hearing panel concludes that J.R. did not direct the respondent to refrain from communicating with opposing counsel.

"18.     On February 18, 2014, J.R. sent the respondent an email message and asked the respondent to withdraw as her attorney. J.R. requested an invoice and a refund of unearned attorney fees. Specifically, she stated, 'I am writing to request that you withdraw my divorce filing from Douglas County court. I no longer wish to be represented by you in any of the current cases we have discussed.'

"19.     On February 19, 2014, Judge Pokorny entered *ex parte* temporary orders, as requested by the respondent.

"20.     On February 19, 2014, the respondent wrote to J.R. In the email message, the respondent stated:

'This e-mail took me completely by surprise. If absolutely necessary, I will withdraw from representing you. However, I want to meet with you as soon as possible to discuss all three (now four) of the matters before you [*sic*]. I do not want you to have me withdraw precipitously when it is not in your best interests. . . . *The fee was fixed and earned upon receipt. I am not refunding you any money*. . . . I am very sorry that I was so very angry at Mr. Sloan but what they did to you was completely slimy. I feel quite certain we can go on with representation, but I need to know all the facts from you, and it would be very good if you would follow my advice. I promise you I know what I am doing, as so far, I have done EXACTLY as instructed by you. I think that you don't completely understand the legal process, and I would be happy to explain it to you more completely. I really want you to talk to your therapist about terminating me before you do.' (Emphasis added.)

The respondent refused to refund any fees as he considered his fee earned when received. Later, child in need of care proceedings were initiated regarding J.R. and G.R.'s two

4

children. In a subsequent email message, the respondent agreed to represent J.R. in the child in need of care cases without additional charge.

"21.    Because J.R. did not have any additional funds to retain new counsel, J.R. did not proceed with terminating the respondent's representation. Rather, J.R. asked the respondent to present a new game plan by Friday, February 21, 2014. The respondent agreed to develop a 'working strategy for the whole thing.' The respondent failed to develop and provide J.R. with a new plan.

"22.    The court scheduled a hearing on J.R.'s second petition for a protection from abuse order in Leavenworth County, Kansas, for February 24, 2014. J.R. and G.R. entered into an agreement that if J.R. dismissed the second petition for a protection of abuse order, then G.R. would request that the criminal charges filed against J.R. be dismissed. Based upon that agreement, prior to the scheduled hearing, J.R. filed a motion to dismiss the second petition for a protection from abuse order with the court. However, prior to the hearing, no action had been taken on J.R.'s *pro se* motion. Because the protection from abuse case remained pending, J.R. appeared at the scheduled hearing. The respondent did not. When the respondent did not appear, J.R. contacted the respondent's office. She spoke with the respondent's legal assistant. The respondent's legal assistant told J.R. that the respondent was attempting to contact the court. The respondent did not appear at the scheduled hearing on the second petition for a protection from abuse order.

"23.    The court granted J.R.'s motion and dismissed the second petition for a protection from abuse order. However, at that time, the criminal case remained pending against J.R.

"24.    On March 4, 2014, Mr. Sloan filed an answer and counter-petition for divorce on behalf of G.R.

"25.    On March 6, 2014, the respondent informed J.R. that he had received the answer and counter-petition from G.R.'s attorney by email. The respondent promised to scan it and send it to J.R. The respondent failed to timely provide J.R. with a copy of the

5

pleading. J.R. was able to obtain a copy of the pleading from G.R. Approximately 2 weeks later, J.R. received a copy of the pleading from the respondent's office.

"26.    On March 12, 2014, the respondent sent J.R. an email message and informed J.R. that he had spoken with the prosecutor and the prosecutor was willing to dismiss the pending criminal case if she provided letters of recommendation from health care providers, counselors, therapists, employers, and others knowledgeable of her good character. J.R. gathered the letters as requested by the respondent and promptly hand-delivered them to the respondent's office. The respondent failed to timely forward the letters to the prosecutor.

"27.    At some point, the respondent scheduled a hip replacement surgery for March 31, 2014. The respondent was scheduled to be at the hospital by 11:00 a.m. on March 31, 2014.

"28.    On March 27, 2014, the respondent informed J.R. of the upcoming surgery. The respondent informed J.R. that he would be in the hospital for a few days, confined at home for 2 weeks, and unable to drive for a period of 6 additional weeks.

"29.    J.R. informed the respondent that her father would be calling him and J.R. authorized the respondent to speak to her father about her representation. The next day J.R.'s father contacted the respondent. The respondent assured J.R.'s father that he would take care of everything before his surgery.

"30.    On March 28, 2014, J.R. called the respondent, emailed the respondent, and sent text messages to the respondent regarding the hearings scheduled on her cases in the upcoming 2 weeks. The respondent did not respond to J.R.'s attempts at communication.

"31.    On Sunday, March 30, 2014, the respondent called J.R. The respondent told J.R. that she did not need an attorney at the CINC hearing because it was just a status conference. J.R. told the respondent she was not comfortable proceeding on her own and wanted to have representation.

6

"32.     During the morning hours of March 31, 2014, before going to the hospital for the surgery, the respondent sent Blanca Marin de Stevanov, a Lawrence attorney, an email message. The respondent emailed Ms. Stevanov, forwarded an email message the respondent received from J.R. to Ms. Stevanov, and provided Ms. Stevanov with some background information regarding J.R.'s case and the hearing that was scheduled for the following day in the CINC case.

"33.     Also that morning before his surgery, the respondent sent J.R. an email. In the email message, the respondent provided J.R. with Ms. Stevanov's contact information. The respondent informed J.R. that either Ms. Stevanov or another attorney from her office would accompany J.R. at the hearing the following day. (Following this email message sent by the respondent on March 31, 2014, the respondent did not communicate with J.R. again.)

"34.     Finally, also that morning before his surgery, the respondent forwarded the good character evidence to the prosecutor. The respondent, however, did not inform J.R. that he had forwarded the good character evidence to the prosecutor.

"35.     On April 1, 2014, the respondent's legal assistant forwarded a 'partially complete request for administrative hearing' to J.R. and requested that J.R. complete the remaining items, sign it, and return it to the respondent's office.

"36.     The court scheduled a hearing on J.R.'s criminal case for April 7, 2014. Because J.R. had not heard from the respondent, on April 3, 2014, J.R. wrote to the prosecutor. She explained that because she had not heard from the respondent, she attached the character letters, proof of completion of a parenting class, and proof of completion of an anger management class. J.R. informed the prosecutor that she could not be at the hearing on April 7, 2014. J.R. requested that the criminal case be dismissed. The prosecutor responded to J.R.'s email and informed J.R. that the criminal case had been continued to May 5, 2014.

"37.    At the hearing on the amended formal complaint, the respondent testified that it was clear to him that by April 11, 2014, he had been fired by J.R. The only evidence to support the respondent's statement was the respondent's earlier statement in a letter dated [*sic*] August 28, 2014. Based on all the evidence before the hearing panel, the hearing panel finds that the respondent's testimony in this regard lacks credibility. Credible evidence was presented that J.R. did not terminate the respondent's representation until May 6, 2014. *See* ¶ 44, below.

"38.    On April 21, 2014, J.R. sent the respondent an email message seeking a status update. The respondent did not respond to J.R.'s email message.

"39.    At the hearing on this matter, the respondent testified that his laptop was stolen and he was unable to communicate by email while he recovered from his surgery. Prior to the hearing, in his response to the complaint and in his answer to the amended formal complaint, the respondent did not mention that his laptop was stolen preventing him from properly communicating. The hearing panel finds the respondent's testimony in this regard to lack credibility.

"40.    Also on April 21, 2014, Mr. Sloan's legal assistant sent an email message to Becky Stephens, Judge Pokorny's administrative assistant. Mr. Sloan's legal assistant copied Mr. Sloan, and the respondent on the email message. In the email message, Mr. Sloan's legal assistant asked Ms. Stephens about how the journal entry from the Leavenworth County CINC cases should be filed in the Douglas County divorce action. The respondent did not respond to the email message.

"41.    On April 28, 2014, Mr. Sloan's legal assistant sent a second email message to Ms. Stephens, following up on the message from April 21, 2014. Mr. Sloan immediately forwarded the correspondence to the respondent. The respondent did not respond to the correspondence.

"42.    On April 30, 2014, Mr. Sloan sent the respondent an email message. In the email message, Mr. Sloan stated that because he had not heard from the respondent and because the judge wanted to file the order, they were going to move ahead without

8

the respondent's signature on the journal entry. The respondent did not respond to the email message.

"43.    On April 30, 2014, J.R. sent an email message to Jennifer Thomas. In the message, J.R. stated that she had not been in contact with the respondent since March 30, 2014. J.R. stated that the respondent promised that he would be available no later than 2 weeks after his surgery on March 31, 2014.

"44.    On May 6, 2014, J.R. sent the respondent an email message, terminating his representation and directing the respondent to withdraw as her attorney in all her cases. The respondent never withdrew as counsel of record from any of the cases where he represented J.R.

"45.    On May 13, 2014, J.R. filed a complaint against the respondent. Leslie M. Miller, an attorney and member of the Douglas County Ethics and Grievance Committee, was assigned to investigate J.R.'s complaint.

"46.    On May 15, 2014, the disciplinary administrator directed the respondent to provide a written response to the complaint filed by J.R. within 20 days. The respondent's written response to the complaint was due June 4, [2014]. The respondent failed to provide a written response to the complaint by June 4, [2014].

"47.    On May 19, 2014, Ms. Miller wrote to the respondent requesting that she be allowed to review his complete file. Additionally, Ms. Miller queried whether the respondent intended to file a response to the complaint. The respondent did not respond to Ms. Miller's May 19, 2014, letter.

"48.    On June 9, 2014, Ms. Miller wrote to the respondent again. Ms. Miller confirmed a conversation that the respondent had with Sherri Loveland, Ms. Miller's law partner and the chairman of the Douglas County Ethics and Grievance Committee where the respondent promised to provide a copy of his file within 2 days. The respondent failed to provide a copy of his file within 2 days, as promised.

9

"49.     On July 10, 2014, Ms. Miller called the respondent by telephone and left a message for the respondent requesting that the respondent return the call. The respondent did not return Ms. Miller's telephone call.

"50.     On July 14, 2014, Ms. Miller wrote to the respondent for a third time. In the letter, Ms. Miller directed the respondent to provide his trust account and billing records by July 24, 2014.

"51.     On July 24, 2014, the respondent finally provided a written response to the complaint. The respondent provided billing records and a portion of his file to Ms. Miller. The respondent never provided the trust account records nor did he provide his complete file to Ms. Miller as directed.

"52.     Through the relevant time period, J.R. had to take numerous personal telephone calls while working. Additionally, J.R. had to attend court hearings. In June 2014, J.R.'s employment as a clinical pharmacist was terminated because her personal and legal matters had interfered with her work. Further, because J.R. was unable to retain counsel to proceed with the divorce, on June 30, 2014, the court dismissed the divorce action. J.R. and G.R. remain married.

"*Conclusions of Law*

"53.     Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.5, KRPC 1.15, KRPC 1.16, KRPC 8.1, KRPC 8.4, Kan. Sup. Ct. R. 207, and Kan. Sup. Ct. R. 211, as detailed below.

"KRPC 1.3

"54.     Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent J.R. The respondent failed to develop a new game plan for J.R. The respondent failed to communicate with Mr. Sloan which delayed J.R.'s cases. The

10

respondent failed to timely forward the good character evidence to the prosecutor. Finally, the respondent's lack of diligence caused injury to J.R. Because the respondent failed to act with reasonable diligence and promptness in representing his client, the hearing panel concludes that the respondent violated KRPC 1.3.

## "KRPC 1.4

"55.     KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' The respondent failed to respond to J.R.'s requests for information. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a) by failing to adequately communicate with J.R.

## "KRPC 1.5 and KRPC 1.15

"56.     Attorney fees must be reasonable. KRPC 1.5(a). Nonrefundable flat fees are *per se* unreasonable. In *In re Scimeca*, 265 Kan. 742, 962 P.2d 1080, the court stated:

> 'The parties stipulated before the panel that a nonrefundable
> unearned retainer is prohibited by MRPC 1.5. We agree. However, the
> Deputy Disciplinary Administrator would have this court, as a matter of
> public policy, require all fees advanced by a client to be refundable,
> regardless of how designated or agreed to by the parties. We decline to
> do so. The better view is to resolve the question based upon the
> agreement between the parties. If the contract or agreement between the
> attorney and the client clearly states that the fee advanced is paid as a
> nonrefundable retainer to commit the attorney to represent the client and
> not as a fee to be earned by future services, then it is earned by the
> attorney when paid and is the attorney's money. If, on the other hand, the
> retainer is to be earned by future services performed by the attorney, then
> it remains the client's money and subject to MRPC 1.15.'

11

"57.    The respondent violated KRPC 1.5(a) when he charged a nonrefundable flat fee.

"58.    Also, lawyers must properly safeguard the property of their clients and third persons. Properly safeguarding the property of others necessarily requires lawyers to deposit unearned fees into an attorney trust account. KRPC 1.15(a) and (d).

"59.    A lawyer may charge a flat fee to a client for a specific task to be undertaken. When the flat fee is paid to the lawyer, it must be deposited into the lawyer's trust account and the fee cannot be withdrawn until it is earned. Since a flat fee is not earned until completion of the task, the entire flat fee must remain in the lawyer's trust account until that task is completed unless the lawyer and client otherwise agree to partial withdrawals based upon the amount earned for completion of specified subtasks. KRPC 1.15(a).

"60.    In this case, the respondent was to earn the fee by representing J.R. in a variety of cases. Because the fee was to be earned by future services performed by the respondent, the fee remained the client's money and was required to be deposited into his attorney trust account. Because the respondent charged a nonrefundable flat fee and because he failed to deposit the fee and the advanced court costs into his attorney trust account, the hearing panel concludes that the respondent violated KRPC 1.5(a), KRPC 1.15(a), and KRPC 1.15(d).

"KRPC 1.16

"61.    KRPC 1.16 provides, in pertinent part, as follows:

'(a)    Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if . . . (3) the lawyer is discharged; or

. . . .

12

'(d)    Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law. KRPC 1.16.'

"62.    The respondent violated KRPC 1.16 in two ways. First, the respondent violated KRPC 1.16(a)(3) when he failed to withdraw from the cases where he had entered his appearance on behalf of J.R. Next, the respondent violated KRPC 1.16(d) when he failed to give reasonable notice to J.R. that he was no longer representing her and when the respondent failed to refund any unearned fees to J.R. The hearing panel concludes that the respondent repeatedly violated KRPC 1.16(d).

"KRPC 8.4

"63.    'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he failed to appear in court with J.R. on February 24, 2014. The respondent engaged in conduct that was prejudicial to the administration of justice when he refused to communicate with opposing counsel. The respondent's refusal to deal with Mr. Sloan delayed the litigation and caused J.R. actual harm. Finally, the respondent's testimony at the hearing on the amended formal complaint was also conduct that was designed to prejudice justice. Specifically, the respondent falsely testified that J.R. directed him to refrain from communicating with Mr. Sloan. Also, the respondent falsely testified that J.R. terminated his representation by April 11, 2014. Finally, the respondent falsely testified that his laptop was stolen. For these reasons, the hearing panel concludes that the respondent repeatedly violated KRPC 8.4(d).

"64.    Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) provide the requirements in this regard. '[A] lawyer in connection with a . . . disciplinary matter, shall not:  . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority . . . .' KRPC 8.1(b).

> 'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.'

Kan. Sup. Ct. R. 207(b). The respondent failed to provide a timely response to the complaint filed by J.R. The respondent never complied with the investigator's direction to provide a complete copy of his file. Finally, the respondent never complied with the investigator's direction to provide a copy of trust account records. Therefore, the hearing panel concludes that the respondent violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b).

"Kan. Sup. Ct. R. 211

"65.    The Kansas Supreme Court Rules require attorneys to file answers to formal complaints.

> 'The respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

Kan. Sup. Ct. R. 211(b). The respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a written answer to the formal complaint and by failing to file a timely answer to the amended formal complaint. Accordingly, the hearing panel concludes that the respondent violated Kan. Sup. Ct. R. 211(b).

14

"66.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"67.     *Duty Violated*.  The respondent violated his duty to his client to provide diligent representation and adequate communication. The respondent also violated his duty to his client to properly safeguard his client's money. The respondent violated his duty to the public to maintain his personal integrity. Finally, the respondent violated his duty to the legal profession to cooperate in disciplinary investigations.

"68.     *Mental State*.  The respondent knowingly violated his duties.

"69.     *Injury*.  As a result of the respondent's misconduct, the respondent caused actual injury to J.R. Further, the respondent caused injury to the legal profession.

"70.     *Aggravating and Mitigating Factors*.  Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

'a.      Prior Disciplinary Offenses.  The respondent has been previously disciplined on three occasions.

1)      On November 29, 2001, the respondent entered into the attorney diversion program for an advertising rule violation.

15

2)      On July 18, 2006, the disciplinary administrator informally admonished the respondent for having violated KRPC 1.3, KRPC 1.4, and KRPC 3.2.

3)      On December 19, 2008, the disciplinary administrator informally admonished the respondent for having violated KRPC 1.4.

'b.      <u>Selfish Motive</u>.  The respondent engaged in selfish conduct when he did not return the unearned fees. Accordingly, the hearing panel concludes that the respondent's misconduct was motivated by selfishness.

'c.      <u>Multiple Offenses</u>.  The respondent committed multiple rule violations. The respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.5, KRPC 1.15, KRPC 1.16, KRPC 8.1, KRPC 8.4, Kan. Sup. Ct. R. 207, and Kan. Sup. Ct. R. 211. Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

'd.      <u>Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process</u>.  The respondent failed to provide a timely written response to the complaint in this case. The respondent failed to provide a copy of his complete file to the attorney investigator. The respondent failed to provide his attorney trust account records. The respondent failed to file an answer to the formal complaint. Additionally, the respondent failed to file a timely answer to the amended formal complaint. The respondent's repeated failure to comply with the rules which govern disciplinary investigations and prosecutions amounts to bad faith obstruction of the disciplinary proceeding.

'e.      Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process. At the hearing on the amended formal complaint, the respondent falsely testified that J.R. directed him to refrain from communicating with opposing counsel. Additionally, the respondent falsely testified that it was clear that his representation had been terminated by April 11, 2014. Finally, the respondent falsely testified that his laptop was stolen. The hearing panel is troubled by the respondent's attempt at deception through this testimony.

'f.      Vulnerability of Victim.  J.R. was vulnerable to the respondent's misconduct.

'g.      Substantial Experience in the Practice of Law.  The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1994. At the time of the misconduct, the respondent has been practicing law for approximately 20 years.'

"71.      Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

'a.      Physical Disability.  During the respondent's representation of J.R., he had his hip replaced. Prior to the hip replacement surgery, he was in significant pain. The hearing panel concludes that the respondent's physical disability is a significant mitigating factor in this case.

'b.      Remorse.  At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.'

17

"72.    In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.12    Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

'4.13    Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.

'4.42    Suspension is generally appropriate when:

(a)    a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)    a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'7.2    Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

"*Recommendation*

"73.    The disciplinary administrator recommended that the respondent's license to practice law in Kansas be suspended for a period of 1 year. The disciplinary administrator further recommended that the respondent undergo a reinstatement hearing, under Kan. Sup. Ct. R. 219. The respondent recommended that he be censured and that the hearing panel accept his plan of probation and recommend to the Kansas Supreme

Court that he be allowed to continue to practice law under the terms and conditions of probation.

"74.     In order for the hearing panel to recommend that the respondent's plan of probation be adopted, the hearing panel must first find that:

'a.     The respondent developed a workable, substantial, and detailed plan of probation and provided a copy of the proposed plan of probation to the disciplinary administrator and each member of the hearing panel at least fourteen days prior to the hearing on the formal complaint;

'b.     The respondent puts the proposed plan of probation into effect prior to the hearing on the formal complaint by complying with each of the terms and conditions of the probation plan;

'c.     The misconduct can be corrected by probation; and

'd.     Placing the respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

"75.     Under the circumstances, the hearing panel considered the respondent's plan of probation to be filed timely. However, the hearing panel concludes that the respondent's plan is not workable, substantial, and detailed, as required by the rule. Further, because the respondent engaged in dishonest conduct, the hearing panel concludes that the respondent's misconduct cannot be corrected by probation. Finally, the hearing panel concludes that placing the respondent on probation is not in the best interests of the legal profession and the citizens of the State of Kansas.

"76.     It is unclear to the hearing panel when the respondent scheduled his hip replacement surgery. However, it is clear to the hearing panel that the respondent failed to make proper arrangements to have someone cover his practice and communicate on his behalf as to J.R. during the extended period of time he was away from his practice.

19

"77.     Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be suspended for a period of 6 months. The hearing panel further recommends that prior to reinstatement, the respondent be required to undergo a hearing pursuant to Kan. Sup. Ct. R. 219. The hearing panel recommends that the respondent be required to refund $3,000 to J.R. prior to the time he files a petition for reinstatement. During the period of suspension, the respondent should develop a workable, substantial, and detailed plan of probation. The hearing panel recommends that upon reinstatement, the respondent be subject to probation including practice supervision for a period of 2 years.

"78.     Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Kansas Supreme Court Rule 211(f) (2015 Kan. Ct. R. Annot. 350). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaint, to which he untimely filed an answer, and adequate notice of the hearing before the panel and the hearing before this court. The respondent did not file exceptions to the hearing panel's final hearing reports. As such, the findings of fact are deemed admitted. Kansas Supreme Court Rule 212(c) and (d) (2015 Kan. Ct. R. Annot. 369). The respondent's tack of

20

attempting to refute some of the panel's factual findings at oral argument is unavailing. Moreover, the respondent's contention that his probation plan was specific enough because he used a Kansas Lawyers Assistance Program (KALAP) form fails to apprehend the distinction between a plan of probation submitted for approval to this court and a monitoring agreement entered into between the respondent and KALAP. The monitoring agreement might well be an included condition of a probation plan, but it is not a substitute for a workable, substantial, and detailed plan of probation.

The evidence before the hearing panel establishes by clear and convincing evidence that the charged misconduct violated KRPC 1.3 (2015 Kan. Ct. R. Annot. 461) (diligence); 1.4(a) (2015 Kan. Ct. R. Annot. 482) (communication); 1.5(a) (2015 Kan. Ct. R. Annot. 503) (fees); 1.15(a) (2015 Kan. Ct. R. Annot. 556) (safekeeping property) and 1.15(d) (preserving client funds); 1.16(a)(3) and (d) (2015 Kan. Ct. R. Annot. 572) (termination of representation); 8.1(b) (2015 Kan. Ct. R. Annot. 661) (failure to disclose a fact necessary to correct a misapprehension known by respondent); 8.4(d) (2015 Kan. Ct. R. Annot. 672) (engaging in conduct prejudicial to the administration of justice); Kansas Supreme Court Rule 207(b) (2015 Kan. Ct. R. Annot. 328) (failure to cooperate in disciplinary investigation); and Kansas Supreme Court Rule 211(b) (2015 Kan. Ct. R. Annot. 350) (failure to file answer in disciplinary proceeding). We adopt the panel's findings and conclusions.

At the hearing before the panel, the Disciplinary Administrator recommended the respondent be suspended from the practice of law for a period of 1 year and that the respondent undergo a reinstatement hearing pursuant to Kansas Supreme Court Rule 219 (2015 Kan. Ct. R. Annot. 403). The respondent recommended public censure and acceptance of his probation plan. The hearing panel recommended that the respondent be suspended from the practice of law for a period of 6 months; that he undergo a reinstatement hearing pursuant to Kansas Supreme Court Rule 219; that he refund $3,000

21

to J.R. prior to his filing for reinstatement; that he develop a workable, substantial, and detailed plan of probation; and that he be subject to probation including practice supervision for a period of 2 years after reinstatement.

At the hearing before this court, at which the respondent appeared, the office of the Disciplinary Administrator continued to recommend a 1-year suspension, followed by a reinstatement hearing. The respondent announced that he was not contesting the hearing panel's recommendation of a 6-month suspension, due, in part, to his assessment that he did not have the "emotional energy" to continue practicing law at that time.

This court is not bound by the recommendations of the Disciplinary Administrator or the hearing panel. *In re Mintz*, 298 Kan. 897, 911-12, 317 P.3d 756 (2014). The court bases each disciplinary sanction on the specific facts and circumstances of the violations and aggravating and mitigating circumstances presented in the case. *Mintz*, 298 Kan. at 912. This court has taken the position that, while prior cases may have some bearing on the sanctions that the court elects to impose, those prior cases must give way to consideration of the unique circumstances that each individual case presents. *In re Busch*, 287 Kan. 80, 86-87, 194 P.3d 12 (2008); see also *Dennis*, 286 Kan. at 738 (discipline dictated by particular facts of case before the court).

Given the respondent's acknowledgement that his mental health issues—depression and anxiety—are currently an impediment to his practice of law, we agree with the Disciplinary Administrator that a 1-year suspension is more appropriate here. Moreover, the circumstances dictate that the respondent be required to undergo a reinstatement hearing pursuant to Kansas Supreme Court Rule 219. Prior to seeking reinstatement, the respondent shall have made restitution to the Client Protection Fund in the amount of $3,000 and shall have obtained a mental health clearance certifying that the respondent is fit to practice law. The conditions upon which the respondent may be

22

reinstated shall be determined at the time of the reinstatement hearing and may include an appropriate plan of probation submitted by the respondent.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that John M. Knox be and he is hereby suspended from the practice of law in Kansas, effective upon the filing of this opinion. The suspension shall be for a minimum term of 1 year and thereafter until reinstatement shall be ordered pursuant to Kansas Supreme Court Rule 219.

IT IS FURTHER ORDERED that John M. Knox shall comply with Kansas Supreme Court Rule 218 (2015 Kan. Ct. R. Annot. 401).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.